IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CECIL FAIRLEY,                                    2:14-CV-00030-BR

        Plaintiff,                              OPINION AND ORDER

v.

STEVE SHELTON, WILLIAM
HOEFEL, COLLETT PETERS,
MITCH MORROW, MICHAEL GOWER,
MICHAEL PUERINI, HEIDI
MILLER, LINDA GRUENWALD,
BENNETT NORTON, DANIEL
DEWSNUP, KENNETH BECKER,
HANSON, J. DIEHL,
G. VANHOUTEN, C. DIGIULIO,
ROBERT NUTT, EVERS, SPENCER,
STEVE FRANKE, EILEEN PURCELL,
GARDNER, SHAW, HODGES,
BRIDGETT WHELAN, sued in
their individual and official
capacities,

        Defendants.


CECIL FAIRLEY
#12196907
Two Rivers Correctional Institution
82911 Beach Access Road
Umatilla, OR 97882-9419

       Plaintiff, *Pro Se*


1 - OPINION AND ORDER

**ELLEN F. ROSENBLUM**
Attorney General
**MICHAEL R. WASHINGTON**
Senior Assistant Attorney General
1162 Court Street N.E.
Salem, OR 97301-4096
(503) 947-4700

      Attorneys for Defendants


**BROWN, Judge.**

      This matter comes before the Court on Defendants' Motion
(#41) for Summary Judgment and Plaintiff's Motion[1] (#14) for
Preliminary Injunction.  For the reasons that follow, the Court
**GRANTS** Defendants' Motion for Summary Judgment and **DENIES as moot**
Plaintiff's Motion for Preliminary Injunction.


<u>**BACKGROUND**</u>

      On January 7, 2014, Plaintiff Cecil Fairley, an inmate at
Two Rivers Correctional Institution (TRCI), filed a *pro se*
Complaint in this Court pursuant to 42 U.S.C. § 1983 in which he
alleges Defendants have been deliberately indifferent to his
serious medical needs in violation of the Eighth Amendment to the
United States Constitution by denying him appropriate medical
care and treatment for his right knee and a back condition.

---

[1] Plaintiff filed only a Memorandum in Support of a Motion
for Preliminary Injunction.  The Court, however, construes
Plaintiff's Memorandum as a Motion and Memorandum in Support of
his Motion for Preliminary Injunction.

2 - OPINION AND ORDER

On January 14, 2014, Plaintiff filed a Motion for Preliminary Injunction in which he sought an order directing Defendants to "provide a medically appropriate course of treatment for Plaintiff's knee" including surgery and to "provide effective pain medication . . . to alleviate Plaintiff's ongoing nerve/back pain and discomfort."

On July 3, 2014, Defendants filed a Motion for Summary Judgment as to all of Plaintiff's claims.

On July 3, 2014, the Court issued a Summary Judgment Advice Notice to Plaintiff advising him that if he did not submit evidence in opposition to Defendants' Motion for Summary Judgment, summary judgment would be entered against him if appropriate.

On August 10, 2014, Plaintiff filed a Response to Defendants' Motion for Summary Judgment.  The Court took this matter under advisement on September 29, 2014.


**STANDARDS**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Washington Mut. Ins. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011).  *See also* Fed. R. Civ. P. 56(a).  The moving party must show the absence of a dispute as to a material fact.  *Rivera v. Philip Morris, Inc.*,

3 - OPINION AND ORDER

395 F.3d 1142, 1146 (9th Cir. 2005).  In response to a properly
supported motion for summary judgment, the nonmoving party must
go beyond the pleadings and show there is a genuine dispute as to
a material fact for trial.  *Id.*  "This burden is not a light one
. . . .  The non-moving party must do more than show there is
some 'metaphysical doubt' as to the material facts at issue."  *In
re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)
(citation omitted).

A dispute as to a material fact is genuine "if the evidence
is such that a reasonable jury could return a verdict for the
nonmoving party."  *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d
1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby,
Inc.*, 477 U.S. 242, 248 (1986)).  The court must draw all
reasonable inferences in favor of the nonmoving party.  *Sluimer
v. Verity, Inc.*, 606 F.3d 584, 587 (9th Cir. 2010).  "Summary
judgment cannot be granted where contrary inferences may be drawn
from the evidence as to material issues."  *Easter v. Am. W. Fin.*,
381 F.3d 948, 957 (9th Cir. 2004)(citation omitted).  A "mere
disagreement or bald assertion" that a genuine dispute as to a
material fact exists "will not preclude the grant of summary
judgment."  *Deering v. Lassen Cmty. Coll. Dist.,* No. 2:07-CV-
1521-JAM-DAD, 2011 WL 202797, at *2 (E.D. Cal., Jan. 20, 2011)
(citing *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir.
1989)).  When the nonmoving party's claims are factually

implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009)(citation omitted).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Id.*

## DISCUSSION

### I.  Standards

Deliberate indifference to serious medical needs is a cognizable claim for violation of the Eighth Amendment proscription against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). *See also Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014)(same).

> To sustain [a] deliberate indifference claim, [a plaintiff must] meet the following test: "First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.  Second, the plaintiff must show the defendant's response to the need was deliberately indifferent."

*Peralta v. Dillard*, No. 09-55907, 2013 WL 57893, at *3 (9th Cir. Jan. 7, 2013)(quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)).  To satisfy the second prong (*i.e.,* that defendant's

5 - OPINION AND ORDER

response to the need was deliberately indifferent), a plaintiff must show there was "'(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm [was] caused by the indifference.'" *Id.* (quoting *Jett*, 439 F.3d at 1096). Deliberate indifference may be established by showing that prison officials have denied, delayed, or intentionally interfered with medical treatment or it may be demonstrated by the way prison officials have provided medical care. *Jett*, 439 F.3d at 1096.

"Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004)(citation omitted). *See also Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012)("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). In addition, "a plaintiff's showing of nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another [is] insufficient, as a matter of law, to establish deliberate indifference." *Wilhelm*, 680 F.3d at 1122 (quotation omitted).

## II. Analysis

As noted, Plaintiff contends Defendants have been deliberately indifferent to his serious medical needs in violation of the Eighth Amendment by failing to provide him with

an appropriate course of treatment for his right-knee injury including surgery and by failing to provide him with appropriate pain medications and a course of treatment for his back condition.

### A.   Eleventh Amendment

Plaintiff alleges in his Complaint that he brings his claims against Defendants in their official and individual capacities and seeks damages.

The Ninth Circuit has made clear that claims for damages against defendants in their official capacities are barred by the Eleventh Amendment.  *See, e.g., Wilson v. Wheeler*, No. 12-36006, 2014 WL 3733865, at *1 (9th Cir. Jul. 30, 2014) ("The district court properly dismissed [the plaintiff's] constitutional claims against defendants in their official capacities because those claims are barred by the Eleventh Amendment."); *Brown v. Or. Dep't of Corr.*, 751 F.3d 983, 988-89 (9th Cir. 2014)("[The plaintiff's] claims against the Oregon Department of Corrections and his damages claims against the individual defendants in their official capacities are barred by the Eleventh Amendment.").

Accordingly, the Court grants Defendants' Motion for Summary Judgment as to Plaintiff's claims for damages against Defendants in their official capacities.

### B.   Defendant Michael Gower

Plaintiff alleges in his Complaint that Defendant Gower responded to and denied two of Plaintiff's second grievance appeals on July 27, 2011, and January 8, 2013.  The Ninth Circuit, however, has held "[b]ecause 'inmates lack a separate constitutional entitlement to a specific grievance procedure,' . . . defendants cannot be held liable under § 1983 for denying [an inmate's grievance] appeal."  *Shallowhorn v. Molina*, 572 F. App'x 545, 547 (9th Cir. 2014)(quoting *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003)).

Accordingly, the Court grants Defendants' Motion for Summary Judgment as to Plaintiff's claims against Defendant Gower.

**C.   *Respondeat Superior***

Defendants move for summary judgment on Plaintiff's claims against William Hoefel, Collett Peters, Mitch Morrow, and Steve Franke on the ground that Plaintiff has failed to establish these Defendants personally participated in the conduct underlying Plaintiffs' claims.

The Ninth Circuit has made clear that "'[l]iability under § 1983 must be based on the personal involvement of the defendant.  There is no *respondeat superior* liability under section 1983.'"  *Shallowhorn*, 572 F. App'x at 546 (quoting *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989)).  Plaintiff does not allege or establish any facts that suggest Hoefel, Peters,

8 - OPINION AND ORDER

Morrow, or Franke personally participated in the alleged deprivation of Plaintiff's medical care.

Accordingly, the Court grants Defendants' Motion for Summary Judgment as to Plaintiff's claims against Hoefel, Peters, Morrow, and Franke.

**D.   Statute of Limitations**

Plaintiff's Complaint contains allegations related to his right-knee injury and treatment beginning September 3, 2009, and allegations related to his back condition beginning May 23, 2000.  Defendants assert portions of Plaintiff's claims are barred by the applicable statute of limitations.

The Ninth Circuit has held courts must apply the forum state's statute of limitations for personal-injury claims to any claims under § 1983. *See, e.g. Butler v. Nat'l Comm. Renaissance of Ca.*, 766 F.3d 1191, 1198 (9th Cir. 2014)("Section 1983 does not contain its own statute of limitations.  Without a federal limitations period, the federal courts apply the forum state's statute of limitations for personal injury actions.").  Under Oregon law personal-injury claims must be commenced within two years of the injury.  *See* Or. Rev. Stat. § 12.110(1).

The Supreme Court, however, has held "the accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007).  Under federal law "a claim accrues . . .

9 - OPINION AND ORDER

when the plaintiff knew or in the exercise of reasonable
diligence should have known of the injury and the cause of that
injury." *Bonneau v. Centennial Sch. Dist. No. 28J,* 666 F.3d 577,
581 (9th Cir. 2012)(quotations and citations omitted).

        **1.   Denial of Knee Surgery**

        Plaintiff alleges the following, among other
things, in his Complaint:  He was denied surgery on his knee on
October 28, 2010; he was advised on December 1, 2010, in response
to a grievance form related to knee surgery that Defendants
considered surgery on Plaintiff's knee to be "elective";
Defendant Steve Shelton responded to Plaintiff's grievance appeal
on January 5, 2011, that medical staff had "decided on
conservative non-surgical treatment of plaintiff's knee; on
June 28, 2011, the Therapeutic Level of Care (TLOC) Committee
again denied Plaintiff knee surgery; on July 27, 2011, Plaintiff
received a response to his second grievance appeal and was again
denied knee surgery; and on November 8, 2011, Defendant held a
"telephonic [TLOC Committee] meeting to evaluate Plaintiff's knee
condition [and] knee surgery was denied."  Throughout his
Complaint Plaintiff alleges he continued to complain about his
lack of knee surgery via various channels, but Defendants still
denied the surgery.

        As noted, Plaintiff filed his Complaint on
January 7, 2014.  The allegations in Plaintiff's Complaint

reflect Plaintiff's cause of action for deliberate indifference to his alleged need for knee surgery accrued well before January 7, 2012, which is two years before Plaintiff filed his Complaint in this Court.  Thus, it is clear that Plaintiff "knew or should have known" more than two years before he filed his Complaint that Defendants denied him knee surgery.  The Court, therefore, concludes this portion of Plaintiff's claim for deliberate indifference is untimely.

Accordingly, the Court grants Defendants' Motion for Summary Judgment as to Plaintiff's claim against Defendants for deliberate indifference in failing to perform surgery on Plaintiff's knee.

### 2.   Knee Treatment

Defendants also contend the portion of Plaintiff's claim for deliberate indifference that relates to Defendants' alleged inadequate medical care for Plaintiff's knee before January 7, 2012, is untimely.  Even if Defendants had been deliberately indifferent, Plaintiff knew or should have known before January 7, 2012, that Defendants were not providing him with adequate medical care and that, as a result, he suffered an injury.  The Court agrees.

Accordingly, the Court grants Defendants' Motion for Summary Judgment as to the portion of Plaintiff's deliberate-indifference claim related to Defendants' alleged failure to

11 - OPINION AND ORDER

properly treat Plaintiff's knee before January 7, 2012.

### 3. Back Treatment

Defendants assert the portion of Plaintiff's claim for deliberate indifference for inadequate medical care for his back condition that occurred before January 7, 2012, is untimely. Even if Defendants had been deliberately indifferent, Plaintiff knew or should have known before January 7, 2012, that Defendants were not providing him with adequate medical care for his back condition and that, as a result, he suffered an injury. The Court agrees.

Accordingly, the Court grants Defendants' Motion for Summary Judgment as to the portion of Plaintiff's deliberate-indifference claim related to Defendants' alleged failure to properly treat Plaintiff's back before January 7, 2012.

### E. Denial of Knee Treatment after January 7, 2012

As noted, Plaintiff asserts Defendants failed to provide him with adequate treatment for his knee. The record reflects after January 7, 2012, Plaintiff's chart was reviewed on January 27, 2012, and it was noted there was "no clear evidence that neuropathy exists in this individual. He had pain medication and Neurontin for this but it was stopped [due to] diverting." Decl. of Steven Shelton, Ex. 1 at 92. Accordingly, medical staff did not approve further Neurontin for Plaintiff.

Plaintiff alleges on February 9, 2012, he attended sick call and reported he "hurt his knee" and that it was painful and swollen. Compl. at ¶ 108. Plaintiff requested an MRI and pain medication. Medical staff prescribed ibuprofen for pain and swelling on January 27, 2012.

On February 22, 2012, Plaintiff reported to medical staff that he had reinjured his knee and wanted to see a specialist for pain management. Medical staff noted Plaintiff "walk[ed] in a normal gate [*sic*] [and] his R knee has 0 redness 0 effusion." Shelton Decl., Ex. 1 at 90. Medical staff noted they would "present to TLOC for pain management, knee, and opportunity to see specialist." *Id*.

On February 28, 2012, Plaintiff reported to medical staff that his right knee was swollen. The record reflects Plaintiff had "some mild swelling on area interior to patella," and he was "to be discussed today during the TLOC Committee meeting." Shelton Decl., Ex. 1 at 90. The TLOC Committee denied Plaintiff Neurontin.

On April 25, 2012, Plaintiff reported to medical staff that his knee hurt. Medical staff noted Plaintiff had slight swelling in his right knee and limited range of motion. Medical staff scheduled Plaintiff to see a doctor,

On April 30, May 7, and May 10, 2012, Plaintiff reported to sick call and requested to have his "sports

restriction" modified to allow him to begin to exercise his upper body.  Medical staff noted at each visit that Plaintiff walked with a normal gait, his knee was not swollen, and he had good range of motion.  Shelton Decl., Ex. 1 at 86-87.  On April 30, 2012, medical staff opined Plaintiff might be engaging in "manipulative behavior."  *Id*. at 87.  Nevertheless, on May 10, 2012, medical staff lifted Plaintiff's sports restriction and noted the sports restriction would be reinstated if he returned to the clinic with pain.

On June 13, 2012, medical staff received an email from a corrections officer in which she advised on June 12 and 13, 2012, she had "witness[ed] [Plaintiff] playing basketball, he was jumping in the air, doing hoop shots, and running."  Shelton Decl., Ex. 1 at 5.

On August 30, 2012, Plaintiff reported to medical staff that he was experiencing severe pain in his right knee and wanted stronger pain medication and an MRI.  Medical staff noted Plaintiff sat on the examination table without evidence of distress, did not show any guarding or facial grimacing with movements, and walked heel-to-toe without any foot drop.  Shelton Decl., Ex. 1 at 81.  Medical staff spoke with the corrections officer in Plaintiff's unit who reported Plaintiff functioned well in the unit and that Plaintiff wiped down tables, folded laundry, spent a lot of time in the yard lifting weights and

"shooting hoops," and did not appear to have any noticeable pain. *Id.* at 79-80.  Later on August 30, 2012, another corrections officer emailed medical staff advising that she had observed Plaintiff walking laps around the yard and "trotting" up and down stairs without apparent pain.  Shelton Decl., Ex. 1 at 4.

In September and October 2012 Plaintiff reported to medical staff that he had chronic knee pain.  Medical staff noted Plaintiff did not have any functional changes in his condition and concluded Plaintiff was overusing his knee.  Medical staff prescribed over-the-counter medications, ice, and elevation of his knee.

From October 2012 through January 2013 medical staff prescribed NSAIDs (including Ketoprofen and Relafen), ice, elevation, hot-packs, and staying off of his knee.  During this time Plaintiff was observed walking without difficulty and without guarding.

On January 8, 2013, the TLOC Committee concluded ACL repair was not medically necessary for Plaintiff's knee.  The TLOC Committee also determined an MRI and narcotics or Tramadol were not necessary for pain management.

On September 4, 2013, Plaintiff reported to medical staff that he was having pain in his right leg.  On examination Plaintiff showed bilateral leg strength of 5/5, negative straight leg-raise, and no difficulty walking on his heels and toes.

15 - OPINION AND ORDER

Shelton Decl., Ex. 1 at 68-69.  Medical staff noted Plaintiff had been in the Disciplinary Segregation Unit (DSU) for repeatedly kicking another inmate on July 21, 2013, and suggested the flair-up of Plaintiff's pain might be due to that activity.  Medical staff noted Plaintiff was difficult to assess and recommended over-the-counter medications, stretching, and avoiding activities that might aggravate his condition.

Steve Shelton, M.D., summarized his review of Plaintiff's medical record as follows:

> While [Plaintiff] seems to believe that having reconstructive surgery of his ACL will alleviate or eliminate his knee pain altogether, that just is not the case.  [Plaintiff's] knee is damaged, not just his ACL, and therefore; repairing his ACL will not change any of the other prior injuries. ACL surgery will not cure him of his knee pain, nor is it actually the most likely source of his knee pain.  There are, however, treatments recommended to him that if done on a regular basis can provide some pain relief and, in fact, helps most people to return to daily living activities. [Plaintiff] has been counseled on participating in stretching, strengthening, and other low impact type of exercises that will help to keep the knee joint mobile and the muscles around his knee strong, which will help to support the knee. alleviating some pain, and keeping function maximized.  Health Services continues to monitor and evaluate [Plaintiff's] conditions and complaints to ensure his overall health. [Plaintiff]'s condition is stable.

Shelton Decl. at ¶ 122.

Viewing the evidence in the light most favorable to Plaintiff, the Court concludes no reasonable juror could find on this record that Defendants were deliberately indifferent to

16 - OPINION AND ORDER

Plaintiff's serious medical needs with respect to Plaintiff's
knee pain and condition.  Plaintiff, therefore, has not
established Defendants violated Plaintiff's rights under the
Eighth Amendment.

Accordingly, on this record the Court grants
Defendants' Motion for Summary Judgment as to Plaintiff's claim
related to his knee pain and condition.

**F.    Back condition after January 7, 2012**

Plaintiff alleges Defendants were deliberately
indifferent to his back condition when they failed to provide him
with timely examinations and treatment for his back pain.

The record reflects on January 27, 2012, medical staff
reviewed Plaintiff's chart and concluded there was not any "clear
evidence that neuropathy exists in this individual."  Shelton
Decl., Ex. 1 at 92.  As noted, at that time Plaintiff had been
taken off Neurontin because he had been diverting it to other
inmates.

On February 22, 2012, Plaintiff requested the TLOC
Committee review his neuropathic pain related to his back
condition and the decision to deny him Neurontin.

The March 1, 2012, medical record reflects Plaintiff's
back pain and condition were discussed by the TLOC Committee, and
they continued to deny Plaintiff Neurontin.  The TLOC Committee,
however, referred Plaintiff to Dr. Dewship for a second opinion.

On March 26, 2012, Dr. Dewship examined Plaintiff and recommended Neurontin for Plaintiff "when TLOC satisfied is safe to resume." Shelton Decl., Ex. 1 at 91.

On April 10, 2010, the TLOC Committee approved a nerve-conduction study to evaluate Plaintiff's neuropathy. The TLOC Committee did not approve Plaintiff for Neurontin, but the TLOC Committee noted it would reevaluate the Neurontin issue after completion of the nerve-conduction study.

On April 18, 2012, Plaintiff underwent an x-ray of his lumbar spine. Roger Blair, M.D., examining radiologist, noted Plaintiff had "moderately severe narrowing of the L1-2 disc with moderate narrowing at L5-S1." Shelton Decl., Ex. 1 at 125. Dr. Blair also noted Plaintiff had "multiple gallstones." *Id.*

On April 30, May 7, and May 10, 2012, Plaintiff reported to sick call requesting to have his "sports restriction" modified to allow him to exercise his upper body. Medical staff noted at each visit that Plaintiff walked with a normal gait, was able to step onto the examination table without pain, and had good range of motion. Shelton Decl., Ex. 1 at 86-87.

On May 10, 2012, medical staff lifted Plaintiff's sports restriction, but they noted the sports restriction would be reinstated if he returned to the clinic with pain.

On May 15, 2012, Plaintiff was seen by Michael Turner, M.D., for a nerve-conduction study. Dr. Turner noted Plaintiff

18 - OPINION AND ORDER

had "chronic right L5 radiculopathy without signs of uncompensated denervation.  No evidence of peroneal, tibial or sciatic neuropathy."  Shelton Decl., Ex. 1 at 15.  Dr. Turner recommended an "MRI without contrast of the lumbar spine and lumbar epidural steroid injection."  *Id*.

On May 23, 2012, Plaintiff was seen at sick call and stated he had considerable pain in his back and right leg. Medical staff noted Plaintiff was not grimacing and appeared to be calm.  Nevertheless, because medical staff could not locate the results of Plaintiff's nerve-conduction study, they scheduled an appointment with Plaintiff's provider.

On June 6, 2012, Plaintiff reported to sick call complaining of pain and numbness in his right leg.  Medical staff noted Plaintiff walked with an even, steady gait without difficulty, and he did not show any signs of discomfort. Plaintiff was advised Dr. Turner's recommendation for an MRI was presented to the TLOC Committee on June 5, 2012.  Later on June 6, 2012, medical staff informed Plaintiff that the TLOC Committee had approved the MRI.

As noted, on June 13, 2012, medical staff received an email from a corrections officer who advised on June 12 and 13, 2012, that she had "witness[ed] [Plaintiff] playing basketball, he was jumping in the air, doing hoop shots, and running."  Shelton Decl., Ex. 1 at 5.

On June 27, 2012, Plaintiff underwent an MRI of his lumbar spine.  David Nelson, M.D., radiologist noted Plaintiff had:

>    1.    Degenerative disc disease at L5-S1.  The left paraoentral to intraforaminal disc protrusion at this level does impinge mildly on the left personal S1 nerve root.
>
>    2.    Degenerative disc disease at L1-2 and L4-5. No nerve root impingement or significant stenosis is seen at either level.
>
>    3.    Moderate facet degenerative changes throughout the lumbar spine.

Shelton Decl., Ex. 1 at 11.

On June 28, 2012, Plaintiff was seen by medical staff for a follow-up on Plaintiff's request for Neurontin.  Nurse Linda Gruenwald ordered Plaintiff to be placed on Neurontin after admonishing Plaintiff about diverting medication again.

At some point after June 28, 2012, Plaintiff's Neurontin was discontinued.

On July 5, 2012, Plaintiff reported to sick call and asked medical staff why his Neurontin had again been discontinued.  Plaintiff was advised the request to prescribe Neurontin had been reviewed by the TLOC Committee on July 3, 2012, and the TLOC Committee had made the decision to deny Plaintiff Neurontin.

On July 13, 2012, Nurse Gruenwald sent the results of the MRI to Neurosurgeon David Yam, M.D., and requested he advise

20 - OPINION AND ORDER

medical staff whether surgery was indicated or whether conservative treatment was sufficient.

On July 18, 25, and 30, 2012, Plaintiff reported to sick call asking if Dr. Yam had reviewed Plaintiff's MRI.

On July 31, 2012, Dr. Yam reported Plaintiff did not have any "surgical disease on right side; nothing to offer surgically.  Conservative treatments only at this time."  Shelton Decl., Ex. 1 at 10.

On August 6, 17, and 27, 2012, Plaintiff reported to sick call requesting Neurontin and/or another medication to relieve his back pain.

On August 27, 2012, Nurse Gruenwald presented Plaintiff's case to the TLOC Committee and proposed treatment with Neurontin.  The TLOC Committee did not approve Neurontin and instead recommended NSAIDs, exercise, and yoga to treat Plaintiff's back pain.

On August 30, 2012, Plaintiff reported to medical staff that he was in constant pain and that even though he was not requesting a specific medication, he believed he was not being treated properly.  Nurse Gruenwald noted Plaintiff sat on the examination table without evidence of distress, did not show any guarding or facial grimacing with movements, and walked heel-to-toe without any foot drop.  Shelton Decl., Ex. 1 at 81.  Nurse Gruenwald also spoke with the corrections officer in Plaintiff's

unit.  He reported Plaintiff functioned well in the unit and wiped down tables, folded laundry, spent a lot of time in the yard lifting weights and "shooting hoops," and did not appear to have any noticeable pain.  *Id*. at 79-80.  Later on August 30, 2012, another corrections officer emailed Nurse Gruenwald advising her that the officer had observed Plaintiff walking laps around the yard and "trotting" up and down stairs without apparent pain.  Shelton Decl., Ex. 1 at 4.

On September 4, 2012, the TLOC Committee denied Plaintiff the use of Neurontin, denied a follow-up visit with Dr. Turner, denied an abdominal ultrasound, and denied a steroid injection on the grounds that Plaintiff was functional and conservative treatment was recommended.

On August 27, 2013, Plaintiff reported at sick call that he had been experiencing pain in his right lower back for the last month.  Medical staff did not observe any trauma to the area and advised they would assess Plaintiff's range of motion at the noon medication line.

On September 4, 2013, Plaintiff was seen by Nurse Gruenwald and complained of sciatica and pain in his lower right extremity.  Nurse Gruenwald noted Plaintiff walked with a normal gait and was able to get on and off the examination table without any indication of distress.  On examination Plaintiff had bilateral leg strength of 5/5, negative straight leg-raise, and

no difficulty walking on his heels and toes.  Shelton Decl.,
Ex. 1 at 68-69.  Nurse Gruenwald also noted Plaintiff was
difficult to assess and recommended over-the-counter medications,
stretching, and avoidance of activities that might aggravate his
condition.

Viewing the evidence in the light most favorable to
Plaintiff, the Court concludes no reasonable juror could find on
this record that Defendants were deliberately indifferent to
Plaintiff's serious medical needs with respect to Plaintiff's
back pain and condition.  The record reflects Plaintiff was seen
regularly by medical staff who prescribed conservative treatment
for his back condition.  This course of treatment was recommended
by Dr. Yam, an outside medical examiner, as well as by
Plaintiff's ODBC medical providers.  Although Plaintiff may
disagree with this course of treatment, Plaintiff, nevertheless,
has not established a jury question as to whether Defendants
violated Plaintiff's rights under the Eighth Amendment.

Accordingly, on this record the Court grants
Defendants' Motion for Summary Judgment as to Plaintiff's claim
related to his back pain and condition.


## CONCLUSION

For these reasons, the Court **GRANTS** Defendants' Motion (#41)
for Summary Judgment and **DENIES as moot** Plaintiff's Motion (#14)

23 - OPINION AND ORDER

for Preliminary Injunction.

      IT IS SO ORDERED.

      DATED this 29th day of October, 2014.


                            /s/ Anna J. Brown

                            _____
                            ANNA J. BROWN
                            United States District Judge